# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ADAM GOSVENER,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. 2:16-cv-00221-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No. 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion (ECF No. 14) and grants Defendant's Motion (ECF No. 16).

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the

determination of disability.  *Id.*  If the remaining limitations would be disabling,

the claimant is disabled independent of the drug or alcohol addiction and the

addiction is not a contributing factor material to disability.  *Id.*  Plaintiff has the

burden of showing that drug and alcohol addiction is not a contributing factor

material to disability.  *Parra*, 481 F.3d at 748.

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits and disability

insurance benefits on May 30, 2012.  Tr. 144-51.  He alleged an onset date of

October 10, 2007, Tr. 144-51, which was subsequently amended to December 1,

2009.  Tr. 43-44.  The applications were denied initially, Tr. 96-104, and on

reconsideration, Tr. 108-15.  Plaintiff appeared at a hearing before an

administrative law judge (ALJ) on January 10, 2014.  Tr. 37-59.  On January 23,

2015, the ALJ denied Plaintiff's claim.  Tr. 10-36.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful

activity since December 1, 2012.  Tr. 16.  At step two, the ALJ found Plaintiff has

the following severe impairments: polysubstance dependence; cognitive disorder;

borderline intellectual functioning; depressive disorder; and a history of carpal

tunnel syndrome, status-post bilateral releases.  Tr. 16.  At step three, the ALJ

found that Plaintiff's impairments, including substance use disorder, meet Medical

Listings 12.02, 12.04, and 12.09.  Tr. 17.  The ALJ found that if Plaintiff stopped

substance use, his impairments would be severe but would not meet or medically equal the requirements of any listed impairment. Tr. 23-24. The ALJ found that if Plaintiff stopped substance abuse, he would have the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [T]he claimant would be limited to simple, routine, and repetitive tasks that did not require the need to make judgments on complex work-related decisions. The claimant would work best with only superficial contact with the general public but could have occasional interaction with coworkers and supervisors. The claimant would need additional time to respond to changes in a routine work setting.

Tr. 25.

At step four, the ALJ found that if Plaintiff stopped substance use, he would be unable to perform his past relevant work. Tr. 25. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded there are jobs in significant numbers in the national economy that Plaintiff can perform, such as agricultural produce sorter, cannery worker, blender-tank tender helper, and assembler. Tr. 31. The ALJ found substance abuse disorder is thus a contributing factor material to the disability determination. Tr. 31. On that basis, the ALJ concluded that Plaintiff is not disabled as defined by the Act because substance abuse renders him ineligible for benefits. Tr. 31-32.

On April 25, 2016, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplement security income under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for review:

1. Whether the ALJ properly considered Listing 12.05C;

2. Whether the ALJ properly found Plaintiff's ankle impairment as non-severe at step two;

3. Whether the ALJ properly evaluated the medical opinion evidence;

4. Whether the ALJ properly weighed Plaintiff's symptom claims; and

5. Whether the ALJ's step five findings are supported by substantial evidence.

ECF No. 14 at 8.

## DISCUSSION

**A.    Listing 12.05C**

Plaintiff challenges the ALJ's determination that he did not meet Listing 12.05C. ECF No. 14 at 4-8.

Listing 12.05[1] explains that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  It then goes on to state the "[t]he required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied."  *Id*.  Section C requires that two conditions be met: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function."  *Id*.  The Ninth Circuit has held that the introductory paragraph of 12.05 is not met by meeting the two prongs of 12.05C, but actually establishes a separate prong itself.  *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013).  Therefore a claimant must establish the following three prongs to prove he meets Listing 12.05C: (1) subaverage intellectual functioning with deficits in adaptive

_____

[1] On January 17, 2017, new 12.00 listings took effect, however the Social Security Administration has directed district courts reviewing decisions dated before January 17, 2017 to apply the prior versions of the listings.  *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66160–62 (Sept. 26, 2016).

functioning initially manifested before age 22; (2) an IQ score of 60 through 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. *Id*.

In considering Listing 12.05, the ALJ concluded that Plaintiff failed to establish the first prong; he did not demonstrate deficits in adaptive functioning that manifested prior to age 22. Tr. 25. "Adaptive functioning" is a person's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 329 (1993).

First, the ALJ noted that Plaintiff was able to work for years prior to his alleged onset date and even after he turned 22. Tr. 25 (citing Tr. 152-59). Plaintiff's earning records show that Plaintiff worked at substantial gainful levels the year he turned 22 (1998), and for several years after, from 1998-2001 and also in 2007. Tr. 152. In his application, Plaintiff indicated he worked as a groundman laborer for electric companies for 13 years, from 1994 to 2007, a job which required him to use machines, equipment, and tools. Tr. 169-70. Plaintiff challenges the ALJ's reliance on Plaintiff's ability to work, but fails to cite any legal authority indicating that was not an appropriate factor for the ALJ to consider.

Next, the ALJ noted that the earliest medical records available were from 2007, when the Plaintiff was 31, which is several years after he turned 22. Tr. 25.

Third, the ALJ noted that Plaintiff stated in his application paperwork that he graduated from high school the month he turned 19 years of age, was not in special education, and had no difficulties with reading and writing. Tr. 25 (citing Tr. 167-173). Plaintiff challenges this finding, stating that there was evidence in the record that Plaintiff was in special education. ECF No. 14 at 11 (citing Tr. 400, 53). Plaintiff cites a psychiatric evaluation indicating Plaintiff told the provider that he was in special education all through his schooling, Tr. 400, and at the hearing Plaintiff testified that he was in special education, and graduated after taking three years of summer school and two extra years of high school, Tr. 53. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999); *see also Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, there is conflicting evidence in the record regarding whether Plaintiff was in special education. Moreover, the Court notes that Plaintiff graduating from high school the same month of his 19th birthday is not consistent with his statement that he took two extra years of high school. As the ALJ mentioned, there are no records provided prior to 2007. To the extent Plaintiff may have been in special education classes, there is no evidence in

the record regarding what caused him to be placed in special education classes. The ALJ's conclusion that Plaintiff failed to establish the first prong of Listing 12.05C is supported by substantial evidence.

**B.    Step Two – Severe Impairments**

Plaintiff contends the ALJ improperly failed to identify Plaintiff's ankle impairment as a severe impairment at step two.  ECF No. 14 at 11-13.

At step two of the sequential process, the ALJ must determine whether plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  S.S.R. 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work

activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[2] Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.1521(b); S.S.R. 85-28.

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. §§ 404.1523, 416.923. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.*

The ALJ noted that Plaintiff had reported a history of left ankle surgery to medical personnel and testified to having pain and swelling in his left ankle, needing to elevate his ankle most days, and being unable to walk when the ankle swells. Tr. 16. The ALJ further noted that during an examination in March 2013, Plaintiff was observed to have swelling in his ankle. Tr. 16 (citing Tr. 367).

---

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

The ALJ found that Plaintiff did not establish that his ankle impairment was severe. First, the ALJ noted that a single examination does not establish a chronic impairment. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Here, the ALJ reasonably determined that this single examination did not establish a chronic impairment that meets the durational requirement for a finding of disability.

Next, the ALJ noted that Plaintiff sought minimal treatment for his ankle over the course of years, indicating it likely caused no more than minimal limitations. Tr. 16. The record supports the ALJ's conclusion. Plaintiff's medical records indicate that Dr. Ross treated Plaintiff on six occasions, and Plaintiff complained of ankle pain on only one of those occasions. *See* Tr. 340 (Sept. 18, 2012 initial visit: no discussion of ankle pain or observation of ankle swelling/abnormality); Tr. 341 (Sept. 25, 2012 office visit: no discussion of ankle

pain or observation of ankle swelling/abnormality); Tr. 345 (Dec. 4, 2012: same);

Tr. 345-55, 366 (Jan. 8, 2013: same); Tr. 348-49, 366 (Jan. 24, 2013: same).[3]

Plaintiff counters that he had significant periods of homelessness and the

ALJ erred in criticizing Plaintiff's inability to seek regular treatment for his ankle.

ECF No. 14 at 13.  Plaintiff's contention is not supported by the record.  Here, the

ALJ noted that when Plaintiff did seek treatment (notably both before and after the

report of the swollen ankle), he did not complain of ankle pain and he did not

exhibit problems with ambulation.  Tr. 16 (citing, *e.g.*, Tr. 451) (In February 2014,

treatment provider observed "mobility and gait appeared to be normal, with no

evidence of hampered movement or pain"); *see also* Tr. 324 (July 17, 2012

"normal gait and posture").  Significantly, in addition to the visits to Dr. Ross,

Plaintiff sought treatment for a variety of other ailments and did not complain of

ankle pain.  *See, e.g.*, Tr. 323-24 (July 17, 2012 office visit: complained of

testicular and back pain, no mention of ankle pain); Tr. 325-26 (July 20, 2012

office visit: complained of testicular pain; mention of prior ankle surgery, no

mention of ankle pain); Tr. 327-28 (July 23, 2012 office visit: complained of

testicular pain, no mention of ankle pain); Tr. 328 (July 24, 2012 office visit:

---

[3] The only instance Plaintiff mentioned ankle pain to Dr. Ross was the same date

that he asked Dr. Ross to fill out disability paperwork.  *See* Tr. 367-68.

complained of hand pain, no mention of ankle pain); Tr. 331 (July 27, 2012 office visit: complained of testicular pain, no mention of ankle pain); Tr. 338 (Aug. 30, 2012 office visit: complained of testicular/back pain, no mention of ankle pain); Tr. 339 (Sept. 4, 2012: complained of testicular pain, no mention of ankle pain). Given this record, the ALJ reasonably determined that Plaintiff's failure to seek treatment for an ankle impairment indicated it caused no more than minimal limitations. Here, the ALJ reasonably determined that the ankle impairment is not severe.

Even if the ALJ should have determined that the ankle condition is a severe impairment, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that any of the conditions mentioned creates limitations not already accounted for in the RFC and otherwise fails to develop the argument.[4] *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

---

[4] Moreover, as Defendant noted, Dr. Ross opined that Plaintiff's need to lie down could be accommodated during an eight hour period with two fifteen minute and an hour-long break, which is consistent with a normal work schedule. Tr. 364.

2008) (determining issue not argued with specificity may not be considered by the Court). Thus, the ALJ's step two finding is legally sufficient.

**C.    Medical Opinion Evidence**

Plaintiff contends that the ALJ improperly rejected the medical opinion of Tom Ross, M.D. regarding physical limitations and the medical opinions of Julie Rickard, Ph.D.; Terra Rae, Psy.D.; and John Arnold, Ph.D. regarding mental limitations. ECF No. 14 at 13-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

### 1. Dr. Ross

Dr. Ross completed a medical report in March 2013 and diagnosed Plaintiff with left ankle tendinopathy, low back pain, and bilateral carpal tunnel syndrome. Tr. 21, 364-65. Dr. Ross opined that Plaintiff was not likely to return to work, would need to lie down and to elevate his legs during the day; and would miss four or more days of work per month. Tr. 365. The ALJ gave Dr. Ross's opinion little weight. Tr. 28.

Because Dr. Ross's opinion was contradicted by Dr. Koukol, Tr. 91-92, the ALJ was required to give specific and legitimate reasons supported by substantial evidence for giving it little weight. *See Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (when there is conflicting medical

evidence, the Secretary need only set forth "specific, legitimate reasons" constituting substantial evidence for disregarding a treating [or examining] physician's opinion) (internal quotation and citations omitted).

First, the ALJ discredited Dr. Ross's opinion because Dr. Ross observed swelling in Plaintiff's ankle on one occasion, which does not establish a chronic impairment and is not consistent with disabling limitations. Tr. 28. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry*, 688 F.3d at 672. Here, the ALJ reasonably determined that this single examination did not establish a chronic impairment that meets the durational requirement for a finding of disability. As mentioned *supra*, Plaintiff's medical records indicate Dr. Ross treated Plaintiff on six occasions, and Plaintiff complained of ankle pain on only one of those occasions. *See* Tr. 340 (Sept. 18, 2012); Tr. 341 (Sept. 25, 2012); Tr. 345 (Dec. 4, 2012); Tr. 345-55, 366 (Jan. 8, 2013); Tr. 348-49, 366 (Jan. 24, 2013).[5] This was a specific and legitimate reason for rejecting Dr. Ross's opinion.

_____

[5] Of the six office visits to Dr. Ross, the only time Plaintiff mentioned ankle pain was the same date that he asked Dr. Ross to fill out disability paperwork. *See* Tr.

Dr. Ross's assessed limitations were based in part on Plaintiff's allegations

of back pain. Tr. 364-65. As Defendant notes, the ALJ found that Plaintiff's back

pain was not a severe impairment, Tr. 16, which Plaintiff did not challenge.

Second, the ALJ found that Dr. Ross's opinion was inconsistent with the

medical record. Tr. 28. An ALJ may discredit a physician's opinions that are

unsupported by the record as a whole or by objective medical findings. *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Specifically,

the ALJ found that while Plaintiff is alleging years of incapacitating physical

limitations, he has only minimal visits for his allegedly disabling medical

conditions in the record. Tr. 28. The ALJ accurately concluded that the record is

_____

367-68. In addition, Plaintiff saw other providers at the same medical facility and

did not complain of ankle pain. *See* Tr. 323-24 (July 17, 2012 office visit:

complained of testicular and back pain, no mention of ankle pain, "normal gait and

posture); Tr. 325-26 (July 20, 2012 office visit: complained of testicular pain;

mention of prior ankle surgery, no mention of ankle pain); Tr. 327-28 (July 23,

2012 office visit: complained of testicular pain, no mention of ankle pain); Tr. 328

(July 24, 2012 office visit: complained of hand pain); Tr. 331 (July 27, 2012 office

visit: testicular pain); Tr. 338 (Aug. 30, 2012 office visit: testicular/back pain); Tr.

339 (Sept. 4, 2012: testicular pain).

devoid of any medical evidence supporting the allegations of disabling limitations related to an ankle or back impairment. As noted *supra*, Plaintiff sought treatment for a variety of ailments, but failed to mention ankle pain and infrequently mentioned back pain. As the ALJ noted, there is no objective medical imaging of Plaintiff's ankle or back indicating an impairment. Tr. 28.

Moreover, the ALJ noted that Dr. Ross's opinion was contradicted by Dr. Koukol, a state agency medical consultant, who reviewed the records in February 2013. Tr. 28. The ALJ credited Dr. Koukol's opinion that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for six hours and sit for six hours in an eight-hour day because it was consistent with the record as a whole. The ALJ noted that electrodiagnostic testing showed only mild findings on the left wrist; and there is no objective medical imaging of Plaintiff's ankle or back indicating an impairment. Tr. 28. Inconsistency with the medical record is another specific and legitimate reason to discredit Dr. Ross's opinion.

### 2. *Dr. Rickard*

In February 2010, Dr. Rickard performed a mental assessment of Plaintiff. Tr. 377-81. In the clinical interview, Plaintiff complained of carpal tunnel syndrome, describing the pain as being so severe that he wanted to cry when he moved his hand. Tr. 377-78. He admitted that he would "take a couple of hits" of THC (marijuana) in the mornings to manage the pain. Tr. 377. Plaintiff expressed

frustration that he was unable to obtain prescription pain medication due to his

drug addiction, so he has been buying medication on the street.  Tr. 377.  Plaintiff

told Dr. Rickard that when taking medication he could perform light work and

function.  Tr. 377.  From this assessment, Dr. Rickard concluded that "it is unlikely

[Plaintiff] will return to work based on issues."  Tr. 377, 428.  Dr. Rickard

concluded that Plaintiff "lacks insight into drug use," was a "high risk for misuse

of medication," and she recommended he participate in inpatient drug treatment.

Tr. 377-78.  The ALJ assigned some weight to Dr. Rickard's opinion.  Tr. 20-21.

First, the ALJ noted that Dr. Rickard's conclusion that Plaintiff was unable

to work is not a specific functional limitation.  Tr. 21.  The regulations provide that

a statement by a medical source that a Plaintiff is "unable to work" is not a medical

opinion and is not due any special significance.  20 C.F.R. §§ 404.1527 (d),

416.927(d).  The legal conclusion of disability is reserved exclusively to the

Commissioner.  *See* 20 C.F.R. § 404.1527(d)(3) ("We will not give any special

significance to the source of an opinion on issues reserved to the

Commissioner. . ."); *Aaron v. Astrue*, No. 1:07-cv-1303-SMS, 2008 WL 4502268,

at *7 (E.D. Cal. Oct. 7, 2008) ("It is true that the ultimate issue of disability *vel non*

is reserved to the Commissioner because a determination of whether or not a

claimant meets the statutory definition of disability is a legal conclusion reserved

to the Commissioner").  The court in *Aaron* noted that such a conclusion has value

only when the physician supported the conclusion by addressing "the specific extent of a claimant's exertional capacity, precisely limited the maximum hours to be worked, specified the requirement of elevating the legs for precise periods of time, and set forth specific postural limitations." *Fabilla v. Astrue*, No. 1:10-cv-2184-AWI-BAM, 2012 WL 3985140, at *4 (E.D. Cal. Sept. 11, 1012) (citing *Aaron*, 2008 WL 4502268, at *7). Here, Dr. Rickard did not provide any opinion regarding Plaintiff's functional limitations and did not support her opinion that Plaintiff is unlikely to return to work by addressing, for example, the extent of Plaintiff's exertional capacity, or the existence of any postural or mental limitations. Because Dr. Rickard's conclusion was unsupported, the ALJ was entitled to reject it. This was a specific, legitimate reason to give limited weight to Dr. Rickard's opinion.

In addition, the ALJ rejected Dr. Rickard's opinion because she did not explain the basis for the conclusion. Tr. 21. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by

physician's treatment notes).  Here, the ALJ correctly noted that Dr. Rickard

offered no basis for the conclusion.

Plaintiff argues the ALJ ignored parts of Dr. Rickard's report including

Plaintiff's statements about being uncomfortable in groups, swelling in his hands,

lacking insight, unable to read and write, suffering from depression and anxiety,

and exhibiting poor decision making skills.  ECF No. 14 at 14.  However, Plaintiff

points to Plaintiff's subjective complaints, not objective medical findings made by

Dr. Rickard.  Tr. 423-8.  In short, these disclosures are not part of the objective

medical findings.  The ALJ provided specific, legitimate reasons for discounting

Dr. Rickard's opinion.

### 3. Dr. Rea

On June 10, 2010, Dr. Rea performed a "brief psychological evaluation,"

diagnosed major depressive disorder, moderate cannabis dependence, in early full

remission, amphetamine dependence, in early full remission, and anxiety state

NOS.  Tr. 382.  Dr. Rea concluded that Plaintiff was not able to return to work for

three to six months.  Tr. 382.  The ALJ gave this opinion little weight.  Tr. 21.

First, the ALJ noted that Dr. Rea's opinion was temporary, making it of little value

because it did not inform as to Plaintiff's long-term capabilities.  Tr. 21.  Next, the

ALJ rejected it as conclusory.  Tr. 21.  Third, the ALJ rejected the opinion because

it was based primarily on Plaintiff's subjective complaints. Tr. 21. Plaintiff did not contest the ALJ's weighing of this opinion. ECF No. 14 at 14.

On June 24, 2010, Dr. Rea assessed Plaintiff and concluded that Plaintiff is unlikely to "return to meaningful work in the near future. He will likely need significant accommodations if/when he does return to work." Tr. 384. The ALJ gave this opinion little weight. Tr. 21.

First, the ALJ found that the opinions were vague and ambiguous. Tr. 21. An ALJ may discredit a physician's opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Additional factors relevant to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Moreover, the regulations provide that a statement by a medical source that a Plaintiff is "unable to work" is not a medical opinion and is not due any special significance. 20 C.F.R. §§ 404.1527 (d), 416.927(d). Here, Dr. Rea provided no explanation or support for her conclusion. She provided no functional limitations regarding Plaintiff's work abilities. This was a specific, legitimate reason to reject her conclusions.

Next, the ALJ gave Dr. Rea's conclusion limited weight because it made no reference to Plaintiff's substance abuse, making it of less value than other opinions in the record. Tr. 21. The ALJ found Plaintiff was disabled when DAA is included. Tr. 17. This meant the only real question remaining for the ALJ was to determine how Plaintiff functioned without DAA, in order to determine if it was a contributing factor material to disability. The ALJ's determination that Dr. Rea's report does not reflect Plaintiff's limitations without substance abuse is accurate. Tr. 21. Significantly, Plaintiff failed to address this reason provided by the ALJ. Thus, this argument is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (determining issue not argued with specificity may not be considered by the Court). Here, the ALJ did not err in giving little weight to the opinion.

### 4. Dr. Arnold

In June 2013, Dr. Arnold performed a mental evaluation of Plaintiff and opined that Plaintiff has severe limitations in learning new tasks, and has several marked limitations in basic work activities. Tr. 385-87. Dr. Arnold concluded that Plaintiff's impairments did not primarily result from drug or alcohol use and these impairments would persist despite sobriety. Tr. 386. However, Dr. Arnold

recommended Plaintiff undergo a substance abuse evaluation and treatment. Tr. 386.

The ALJ gave little weight to Dr. Arnold's opinion that Plaintiff's impairments would persist without drug and alcohol use. Tr. 23. Because Dr. Arnold's opinion was contradicted by Dr. Toews, Tr. 488-501, the ALJ was required to give specific and legitimate reasons supported by substantial evidence for giving Dr. Arnold's opinion little weight. *See Flaten*, 44 F.3d at 1463.

First, the ALJ discredited Dr. Arnold's conclusion regarding the impairments persisting because they were based on Plaintiff's self-reports of total remission of use of methamphetamine and alcohol, little use of marijuana, and denying a history of prescription drugs. Tr. 22. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Here, the ALJ reasonably concluded that Dr. Arnold's opinion regarding Plaintiff's limitations persisting despite substance abuse were based on Plaintiff's self-reports, which were properly discounted. This was a clear and convincing reason to give limited weight to Dr. Arnold's opinion.

Next, the ALJ gave Dr. Arnold's opinions less weight because Plaintiff gave inconsistent information regarding the extent of his drug and alcohol use at the

evaluation. Tr. 29. The record supports the ALJ's finding. *See Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th Cir. 2012) (affirming ALJ's rejection of examining psychologist's opinion, in part, due to the fact that "plaintiff periodically concealed" his substance abuse from providers); *Serpa v. Colvin*, No. 11-cv-121-RHW, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19, 2013) (affirming ALJ's rejection of a physician's opinion because it was made without knowledge of the claimant's substance abuse and narcotic-seeking behavior). At the evaluation in June 2013, Plaintiff reported that he had not drank alcohol in years, he used marijuana for his hand pain maybe two to three times a month, but he had mostly quit, he last used methamphetamine approximately a year ago, and he did not disclose any pain medication abuse. Tr. 385. In contrast, as the ALJ noted, Plaintiff previously admitted to buying prescription drugs on the street when his doctor would not prescribe them, and admitted to methamphetamine use at the time of this assessment. Tr. 21-23; *compare* Tr. 385 ("Px/OTC abuse: Denied"); *with* Tr. 377 ("he is currently buying medications on the street), Tr. 450 ("drug abuse began with his prescription oxycodone after his surgeries"); *see also* Tr. 50 (testified to methamphetamine use from January to September 2013); Tr. 433 (methamphetamine use in late 2013). The ALJ reasonably relied on Plaintiff's lack of candor regarding his substance abuse in giving little weight to Dr. Arnolds'

opinion that the limitations would persist absent drug use. This was another specific and legitimate reason to reject the assessed mental limitations.

Finally, the ALJ found that Dr. Arnold's opinion was inconsistent with Dr. Toews's opinion, which the ALJ credited. Tr. 23, 29-30. The ALJ credited Dr. Toews over Dr. Arnold because Dr. Toews had the benefits of reviewing the entire medical record and not only the Plaintiff's subjective complaints. Tr. 23, 29-30. Plaintiff did not advance any argument that the ALJ erred in crediting Dr. Toews' opinion over that of Dr. Arnold. *See* ECF No. 14 at 15-16; ECF No. 17 at 5-7. Thus, any argument is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (determining issue not argued with specificity may not be considered by the Court). Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6); 416.927(c)(6). This was an appropriate reason for the ALJ to credit Dr. Toews's opinion over Dr. Arnold's opinion.

**D.    Plaintiff's Symptom Complaints**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 14 at 16-19.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible to the extent they are inconsistent with the RFC assessment. Tr. 26.

### 1. Inconsistent Statements and Exaggeration

In support of the credibility finding, the ALJ identified inconsistencies between Plaintiff's testimony and statements he made in the medical record. Tr. 16. In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including prior inconsistent statements. *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). For example, the ALJ noted that Plaintiff testified that due to his back pain, sitting for even an hour would "kill" him. Tr. 16. The ALJ noted this statement contradicted his prior statement to a medical provider where he reported low back pain which

bothered him "from time to time when he is very active or on his feet a lot." Tr. 16

(citing Tr. 345).

In addition, the ALJ found that Plaintiff gave inconsistent statements

regarding his drug use and history, which undermined his credibility. Tr. 19.

Conflicting or inconsistent reporting of alcohol or drug use can contribute to an

adverse credibility finding. *See Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188

F.3d 1087, 1090 (9th Cir. 1999). For example, the ALJ noted that in December

2012, Plaintiff admitted that methamphetamine caused him to avoid being around

important people in his life, and he admitted to using a gram daily up until

December 2012. Tr. 19 (citing Tr. 307, 315). The ALJ found that these statements

were inconsistent with his hearing testimony, in which he stated that prior to going

to rehab (which occurred in January 2013), he had used methamphetamine only on

and off. Tr. 19 (referring to Tr. 50-51). Moreover, the ALJ noted these statements

were inconsistent with Plaintiff's prior denials to treatment providers regarding

drug use. Tr. 19; *see also* Tr. 287 (Sept. 2012: told treatment provider he is not

using any illegal drugs except occasional marijuana); Tr. 323 (July 2012: told

treatment provider he uses meth and marijuana); Tr. 335 (Aug 2012: told treatment

provider he quit using methamphetamine in 2011).

As another example, the ALJ noted that a June 2013 evaluation, Plaintiff

told Dr. Arnold that he was in total remission of methamphetamine use (had not

used in a year) and had no history of abusing prescription drugs.  Tr. 22 (citing Tr.

385).  As the ALJ identified, Plaintiff admitted to another provider that he bought

pain medication on the street when his provider refused to prescribe it due to his

addiction history.  Tr. 23 (citing Tr. 377).  Moreover, his statement about not

having used methamphetamine for a year was inconsistent with his December 2012

statement that he was using a gram daily.  The ALJ reasonably considered

Plaintiff's inconsistent statements regarding his drug use in assessing his

credibility.

Moreover, the ALJ found Plaintiff less than credible due to instances where

Plaintiff exaggerated his symptoms.  Tr. 26.  The tendency to exaggerate provided

a permissible reason for discounting Plaintiff's credibility.  *See Tonapetyan*, 242

F.3d at 1148 (the ALJ appropriately considered Plaintiff's tendency to exaggerate

when assessing Plaintiff's credibility, which was shown in a doctor's observation

that Plaintiff was uncooperative during cognitive testing but was "much better"

when giving reasons for being unable to work.).  The ALJ noted several examples

related to Plaintiff's complaints of hand pain.  For example, the ALJ noted that

Plaintiff reported pain in his wrist on (Tr. 26, 257 ("exquisite tenderness")), but

electodiagnostic testing the following day, showed normal results.  Tr. 262.  As

another example, Dr. Thorson examined Plaintiff related to his carpal tunnel

symptom and noted no "objective evidence" of carpal tunnel, but did note "chronic

pain behavior," "erratic" test results, and "fairly marked give way weakness."  Tr. 26 (citing 270).  This was another clear and convincing reason to find Plaintiff's symptom complaints less than credible.

### 2. Crime of Dishonesty

The ALJ found that Plaintiff's convictions for crimes of dishonesty further undermined the credibility of his statements.  Tr. 27.  It was proper for the ALJ to consider this factor in making the adverse credibility determination.  *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see also Hardisty v. Astrue,* 592 F.3d 1072, 1080 (9th Cir. 2010) (relying in part on a prior conviction when assessing credibility has a reasonable basis in law); *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (convictions for crimes of moral turpitude are proper basis for adverse credibility finding).  The record indicates that Plaintiff was convicted of breaking and entering and theft of a firearm in 2012 and shoplifting.  Tr. 312, 385.  Plaintiff's contends that his crimes of stealing food while homeless should not be used to discount his testimony.  ECF No. 14 at 19.  Even if the Court concurred, that argument does not address his prior conviction for theft of a firearm.  Here, the ALJ reasonably considered Plaintiff's criminal history in assessing his credibility.

### 3. Objective Medical Evidence

Next, the ALJ concluded that the medical evidence did not support the severity of symptoms Plaintiff alleged. Tr. 16-17, 26-27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ set out, in great detail, the medical evidence contradicting Plaintiff's claims of disabling physical and mental limitations; ultimately concluding that Plaintiff was able to function in accordance with the assessed RFC. Tr. 26.

First, the ALJ found that Plaintiff's complaints regarding his back pain were inconsistent with the medical evidence showing little if any abnormalities related to his ack. Tr. 16-17. Plaintiff testified that due to back pain, sitting for even an hour would "kill" him. Tr. 16. The ALJ found that Plaintiff symptom complaints regarding his back were inconsistent with the examination findings. Tr. 17 (citing

Tr. 324 (July 2012: no CVA tenderness, normal gait and posture); Tr. 266 (April 2012: normal range of motion, no edema, no tenderness, normal strength/coordination); Tr. 346 (Jan. 2013: low back pain which is not significant for disk problems, negative straight leg raising and normal neurologic exam); Tr. 348 (Jan. 2014: despite back pain complaints, treatment provider found "[h]is back is really not remarkable. He has good range of motion, good movement, good flexion," recommending over the counter medication for pain and exercise and weight loss); Tr. 367 (March 2013: despite back tenderness, treatment provider found "[e]xamination of low back shows a fairly good range of motion," except he could not flex well due to being overweight in the belly; negative straight leg test, and neurologic screening normal)). The ALJ reasonably determined that Plaintiff's complaints of back pain are inconsistent with the medical records, which undermined his credibility.

Next, the ALJ found that Plaintiff was not fully credible in his subjective complaints about his hand impairments. Tr. 26-27. As an example, the ALJ noted that when Dr. Thorson evaluated Plaintiff for a surgical consultation, Dr. Thorson noted that the exam results were erratic and difficult to interpret and Plaintiff had "marked give way weakness." Tr. 26 (citing Tr. 367). Dr. Thorson observed that he did not see any objective evidence of either trigger digits or carpal tunnel present to warrant surgical treatment and would relieve symptoms and concluded

that Plaintiff's "marked complaints of pain, numbness, and loss of function are not clearly borne out by objective findings on either clinical exam and nerve conduction studies." Tr. 26, 270. As another example, the ALJ noted that in March 2013, Plaintiff presented to his family doctor that he had significant weakness in both hands, reported that it hurt when he squeezed his hands, and he had restrictions when straightening his fingers out completely. Tr. 27 (citing Tr. 367). The physician noted "I cannot really evaluate as to whether that is real or not." Tr. 367. The provider made no observations or clinical findings to support Plaintiff's claims of pain. Tr. 367. The ALJ's conclusion that the medical record does not support the severity of Plaintiff's allegations is supported by the record. The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence to find Plaintiff less than credible.

**E.     Step Five**

Plaintiff contends the ALJ's step four and step five findings regarding Plaintiff's ability to perform work are not supported by substantial evidence because the testimony from the vocational expert was based on an improper hypothetical. ECF No. 14 at 19. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the

medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Id.* Plaintiff's argument assumes the ALJ erred in evaluating the medical evidence. ECF No. 14 at 19-20. For reasons discussed throughout this decision, the ALJ's hypothetical to the vocational expert was based on the evidence and reasonably reflects Plaintiff's limitations. Thus, the ALJ's findings are supported by substantial evidence and are legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

1      3.  The District Court Executive is directed to file this Order, enter

2  **JUDGMENT FOR DEFENDANT**, provide copies to counsel, and **CLOSE** the

3  file.

4      DATED this September 30, 2017.

5                              s/*Mary K. Dimke*
                               MARY K. DIMKE
6                       UNITED STATES MAGISTRATE JUDGE